UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACI CORREIA, | Case No. 2:20-cv-01139-JDP (SS) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 17 & 19 |
| Defendant. | |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 17 & 19. The court denies plaintiff's motion for summary judgment and grants the Commissioner's motion.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

1

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed her applications for DIB on February 23, 2018, alleging disability beginning January 2, 2018. AR 168. After her application was denied initially and upon reconsideration, she appeared and testified at a hearing before an ALJ. AR 36-60, 97-101, 103-09. On July 20, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 19-35. Specifically, the ALJ found that:

  1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

  2. The claimant has not engaged in substantial gainful activity since January 2, 2018, the alleged onset date.

  3. The claimant has the following severe impairments: degenerative

2

      disc disease of the lumbar spine and degenerative disc disease of the cervical spine.

      * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

      * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except the claimant can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally balance, kneel, stoop, crouch, and crawl; she can occasionally reach overhead with her right upper extremity; and she can occasionally feel, bilaterally.

      * * *

6. The claimant is capable of performing past relevant work as a resident supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

      * * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 2, 2018, through the date of this decision.

AR 19-35 (citations to the code of regulations omitted).

    Plaintiff requested review by the Appeals Council, which denied the request. AR 7-12. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Analysis

    Plaintiff makes five arguments for remand. First, she argues that the Commissioner provided an incomplete hearing transcript in the administrative record. ECF No. 17 at 15-16. Second, she argues that the ALJ failed to adequately consider whether her impairments in combination meet or equal a listed impairment. *Id.* at 20-21. Third, she argues that the ALJ's

residual functional capacity analysis failed to adequately account for her mental impairments. *Id.* at 21-22. Fourth, she contends that the ALJ erroneously rejected her subjective symptom testimony. *Id.* at 22-24. Last, she argues that the vocational expert's testimony conflicts with the Dictionary of Occupational Titles. *Id.* at 16-20. These arguments are insufficient to show that the ALJ committed reversable error.

**A. Administrative Record**

Plaintiff contends that the Commissioner provided an incomplete administrative record in two respects: first, by failing to include a full transcript of the administrative hearing; and second, by failing to include a complete work history. ECF No. 17 at 15.

Plaintiff argues that the Commissioner must have provided an incomplete transcript because an administrative hearing of this length should have produced a longer transcript. *Id.* She observes that the transcript is only "nineteen pages" and that the hearing started at 9:12 AM and concluded at 11:57 AM on March 12, 2019. *Id.* (citing AR 39, 59).[1] In her reply brief, she states that "one minute of court time equals one page" and therefore that a hearing of this length should produce a 165-page transcript. ECF No. 20 at 5. However, this assertion is unsupported by any authority, and she otherwise fails to identify either any testimony omitted from the transcript or any reason to expect that a hearing of this length should result in a longer transcript. In the experience of the undersigned, a twenty-page transcript is not out of the ordinary for a Social Security administrative hearing with two witnesses. For his part, the Commissioner asserts that the record is complete and points to the attorney certification of the record's completeness. ECF No. 19 at 4; AR 1 (certifying "that the documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings"). Plaintiff's speculation to the contrary is insufficient to demonstrate error.

Plaintiff also argues that the record lacks information about her work history. ECF No. 17 at 16. As the Commissioner notes, the record includes her earning records, hearing testimony regarding her past relevant work, and a detailed summary of her work history as part of a

---

[1] In the administrative record provided to the court, the hearing transcript contains twenty pages of testimony. AR 39-59.

4

disability report dating from February 2018.  *See* ECF No. 19 at 5; AR 53-54, 175-81, 186.  Plaintiff fails to explain, in either her summary judgment motion or her reply brief, why this information is insufficient.  She also fails to point to any inaccuracies or issues in the ALJ's findings regarding her past relevant work.  Accordingly, this argument is without merit.

**B.  Listed Impairments**

Plaintiff argues that the ALJ's step three findings are insufficient because he failed to consider the combined effects of her urticaria-idiopathic—a skin condition characterized by hives and inflammation—and her other impairments.  *Id.*; *see* AR 47-48.  "For a claimant to qualify for benefits by showing that [her] . . . combination of impairments[] is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  She must offer a "theory, plausible or otherwise, as to how . . . [her impairments] combined to equal a listed impairment."  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

Plaintiff states only that the ALJ failed to consider whether her skin condition met or equaled listing 8.00.  ECF No. 17 at 20.  She provides no argument or explanation as to how her skin condition and her other conditions combine to meet or equal a listing, and in her reply brief she appears to drop this argument entirely.  To the extent she argues that the ALJ should have considered her skin condition in the RFC, this argument is even less developed.  The undersigned declines to develop either argument on her behalf.  *See Hadnot v. Astrue*, No. C 07-5504 PJH, 2008 WL 5048428, at *7 (N.D. Cal. Nov. 25, 2008), *aff'd*, 371 F. App'x 875 (9th Cir. 2010) (citing *Ghahremani v. Gonzales*, 498 F.3d 993, 997 (9th Cir. 2007) (holding that issues raised but not adequately supported are considered abandoned)).

**C.  RFC Analysis**

Plaintiff contends that the ALJ erred by failing to consider the limiting effects of her mental impairments in his RFC analysis.  ECF No. 17 at 21.  This argument rests on a secondary argument that the ALJ erroneously evaluated the severity of her mental impairments without first obtaining all her medical records.  Neither argument is persuasive.

5

ALJs have an independent duty to fully develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty extends to claimants with counsel, but "the ALJ must be especially diligent . . . [w]hen the claimant is unrepresented." *Id.* The ALJ's duty is heightened where the claimant is "mentally ill and thus unable to protect her own interests." *Id.* (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)). The duty is only triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Id.* The ALJ discharges his duty by "conduct[ing] an appropriate inquiry," *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996), such as by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)).

In evaluating the severity of plaintiff's depression and anxiety, the ALJ explained that "no records have been received from San Joaquin County Medical Center Mental Health ['the Clinic'] for the time period from January 2, 2017 to the present." AR 25. The record reflects that the ALJ repeatedly contacted the Clinic to request plaintiff's mental health records but could not obtain any records. AR 517-18. This is sufficient to discharge the ALJ's obligations, especially given that plaintiff is represented by counsel who could have obtained the records on her behalf. *See Tidwell*, 161 F.3d at 602 (holding that the ALJ satisfied his duty to supplement the record by asking the claimant to provide records from the claimant's physician).

Even if the duty to develop the record required more diligent efforts, plaintiff has not shown that the duty was ever triggered. Plaintiff alleges that the onset date of her disability was January 2, 2018, and she testified that her mental health did not seriously deteriorate until early 2018. AR 54. The ALJ placed significant weight on plaintiff's lack of specialized psychiatric treatment after this point, in early 2018. AR 25. The record supports his conclusion—and plaintiff points to no contrary evidence—that she "received little treatment from a mental health specialist[] and was prescribed psychiatric medications from her primary care physician." AR 25.

Primary care treatment records indicate that plaintiff had received treatment from the Clinic prior to December 2017 but that, by then, she had "stopped going to County mental

6

health . . . for several months." AR 316; *see also* AR 312-16, 450-63, 481-92. Thereafter, she appears to have received prescriptions for her psychiatric medication solely from primary care physicians, who repeatedly encouraged her to obtain specialized mental health treatment. *See* AR 453 ("I am recommending that she contact St. Joseph's behavioral Health Center for evaluation of her chronic anxiety depressive disorder."); AR 486 ("She is not able to work with psychiatrist . . . . [She] was encouraged to make appointment with psychiatrist for follow-up."). Although she did finally visit a psychiatrist in December 2018, she provides no evidence of any follow-up treatment, psychotherapies, or other specialized mental health treatment. AR 488-89. Thus, the record does not admit ambiguity as to plaintiff's mental health treatment following the alleged onset date, and the ALJ's failure to obtain earlier treatment records does not warrant remand.

The ALJ supported his findings—that plaintiff's mental impairments impose only mild limitations and therefore are non-severe—with substantial evidence from the record. He primarily based his findings on the medical opinions of a consultative examining psychologist and two state agency psychiatric consultants. AR 25-26 (citing AR 475-79, 69-70, 85-87). His decision fairly characterizes their opinions, and their opinions are consistent with plaintiff's treatment records from the relevant period, including her psychiatric evaluation in December 2017. *Id.* Plaintiff's most substantial argument to the contrary is that one of her primary care treatment records contains a note stating that "[s]uicidal ideation or attempt is there." ECF No. 17 at 21; AR 486. However, her other records from 2018 consistently indicate no suicidal ideation, and only three months later she told a psychiatrist that her "last suicidal thought [was] several years back[,] 'maybe in the 90's.'" AR 488.[2]

Finally, to the extent plaintiff argues that the ALJ should have included the functional limitations of even her mild limitations in the RFC, her argument is unavailing. Although an ALJ must consider all impairments when evaluating a claimant's RFC, whether or not those

---

[2] Plaintiff also includes two lengthy block quotes from the examining psychologist's report—one of which is wrongly attributed to her primary care physician—but she does not explain the relevance of these quotes. ECF No. 17 at 21-22. The examining psychologist generally concluded that her mental impairments imposed mild limitations. AR 475-79.

1   impairments are severe, *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Hutton v. Astrue*, 491 F.

2   App'x 850, 850-51 (9th Cir. 2012), such consideration need not be extensive or result in any

3   functional limitations if the impairments cause only mild limitations, *see Ball v. Colvin*, No. CV

4   14-2110-DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (holding that an ALJ satisfies

5   his obligations by considering a non-severe impairment at step two and stating that, on that basis,

6   they do not warrant any functional limitations in the RFC). In the ALJ's RFC analysis, he wrote:

7   "In consideration of the claimant's asthma, OSA, anxiety disorder, and depressive disorder,

8   which are nonsevere, the undersigned does not assess any limitations." AR 30. Such a cursory

9   statement is sufficient where, as here, the ALJ thoroughly evaluated the functional limitations

10  imposed by plaintiff's non-severe mental impairments at step two. *See Ball*, 2015 WL 2345652,

11  at *3; *Thompson v. Saul*, No. 1:18-CV-00137-BAM, 2019 WL 3302471, at *7 (E.D. Cal. July 23,

12  2019) (explaining that "courts in this circuit . . . have found *Hutton* to be inapplicable where the

13  record demonstrates that the ALJ considered a claimant's non-severe mental impairments before

14  concluding that they did not cause any significant limitation necessitating inclusion in the RFC")

15  (internal marks and citations omitted); *Barry v. Kijakazi*, No. 1:20-CV-00619-BAM, 2022 WL

16  799665, at *4 (E.D. Cal. Mar. 16, 2022) (collecting cases).

17  **D.  Subjective Symptom Testimony**

18  Plaintiff argues broadly that the ALJ failed to provide clear and convincing reasons to

19  discount her subjective system testimony regarding her back conditions. ECF No. 17 at 22-23. In

20  the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's

21  symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

22  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

23  underlying impairment which could reasonably be expected to produce the pain or other symptoms

24  alleged." *Id.* (internal marks and citations omitted). If the claimant meets this requirement and there

25  is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her

26  symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy

27  requirement to meet: The clear and convincing standard is the most demanding required in Social

28

1  Security cases." *Id.* (internal marks and citations omitted). The ALJ's reasons must be supported by

2  substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

3        Plaintiff's lone argument is that the ALJ's finding that she had "received very minimal

4  treatment for her alleged disabling physical impairments since her alleged onset date of January 2,

5  2018" is not supported by substantial evidence. AR 28; *see* ECF No. 17 at 22-23.[3] The ALJ found

6  that, other than "pain management . . . [and] epidural steroid injections . . . [,] there is little medical

7  evidence of record of any additional treatment, such as physical therapy, chiropractic care, or

8  acupuncture." AR 28 (citing AR 318-19, 366-67, 416-17, 421-22, 457, 459). He added that "she has

9  not undergone any surgeries nor have any surgeries been recommended." AR 28. Plaintiff argues

10 that this characterization constitutes "factual error" and provides the following: "Dr. Jeffrey Mansoor,

11 MD states [that plaintiff] was operated on for multilevel spondylosis. (AR 36). She has had epidurals

12 and joint injections. (AR 36, 427, 446). The record shows she had a radio frequent ablation at

13 Dameron Hospital. (AR 432)." ECF No. 17 at 15, 22-23.

14       This argument is unpersuasive and unsupported. Most significantly, her assertion that

15 Mansoor stated that "she was operated on for multilevel spondylosis" finds no support in the record.

16 *Id.* at 23 (citing AR 36). The citation provided for this statement refers to the cover page of the

17 hearing transcript; Mansoor did not testify at the hearing. *See* AR 36. This could be forgiven as a

18 typographic error—plaintiff might have intended to refer to the treatment records from Dr. Mansoor,

19 which begin on AR 362—except that nowhere in the treatment records does Dr. Mansoor refer to an

20 operation performed on plaintiff. *See* AR 362-80. The treatment records indicate that plaintiff

21 primarily received epidural joint injections, which were considered in the ALJ's decision. *See* AR

22 362-80, 28-30. The lone record of radiofrequency ablation is from May 10, 2017—nearly eight

23 months before the alleged onset date of January 2, 2018. AR 376, 432-38. Moreover, while plaintiff

24 does not explain the nature of this procedure, Mansoor's description suggests that it is a non-surgical

---

27     [3] The ALJ also based his decision on plaintiff's medical records, on the opinions of a consultative examining physician and two non-examining medical consultants, and on a consideration of plaintiff's independence in daily living—such as her "driving, shopping, and

28 helping to take care of her grandchildren." AR 29-30. Plaintiff does not object to these bases.

1 pain-management procedure involving "radiofrequency needles." AR 376.  Plaintiff has not
2 identified any errors in the ALJ's reasoning.

### E. Past Relevant Work and Vocational Expert Testimony

Plaintiff contends that the ALJ failed to adequately support his finding that she can perform past relevant work as a residence supervisor. ECF No. 17 at 16. Specifically, she argues that he erred by relying on testimony from a vocational expert ("VE") without resolving a potential conflict between the testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* at 17-19.

At the fourth step of the sequential evaluation process, the ALJ must determine whether the claimant can perform any past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  "Past relevant work" is work that a claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. §§ 404.1520(b), 416.960(b). Although plaintiff bears the burden of showing that she cannot perform such work, the ALJ must still make the requisite factual findings to support his step-four conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). To show that a claimant can perform past relevant work, an ALJ should assess the claimant's RFC, determine the physical and mental demands of any past relevant work, and then make a finding as to whether her RFC would permit a return to that work as actually or generally performed. *See* SSR 82-62, 1982 WL 31386, at *4 (1982).

To aid in this analysis, the ALJ may rely on an impartial VE to provide testimony, guided by the DOT, "about jobs the applicant can perform despite his or her limitations." *Gutierrez v. Colvin*, 844 F.3d 804, 806-07 (9th Cir. 2016). The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations." *Id.*. Occupations are not specific jobs; rather, "'[o]ccupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Id.* at 807. If the VE's opinion "conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id.* (citing SSR 00-4P, 2000

1   WL 1898704, at *2 (2000)).  To characterize a possible discrepancy between the VE's testimony

2   and the DOT "as a conflict, it must be obvious or apparent." *Id.* at 808.

3       At step four, the ALJ determined that plaintiff was not disabled because she could perform

4   her past relevant work as a residence supervisor, but only as the position was generally

5   performed, not as plaintiff had actually performed it.  AR 30.  In making this finding, the ALJ

6   relied on the VE's testimony from the March 12, 2019 hearing.  AR 30.  After questioning

7   plaintiff about the nature of her prior substantial gainful activity, the VE testified that the job

8   should be categorized under the DOT guidelines as "Residence Supervisor, 187.167-186,

9   sedentary, SVP 6, medium as performed."  AR 56.[4]  The ALJ then asked the VE whether a

10  hypothetical person with the limitations assessed in plaintiff's RFC could perform that job.  AR

11  56.[5]  The VE testified that such a person could work as a residence supervisor as it is generally

12  performed, but not as plaintiff had testified to performing it.  AR 56-57.  The ALJ also asked the

13  VE if plaintiff's past work could be performed by a hypothetical person with the same RFC but

14  with the additional limitation of "occasional reaching in all directions."  AR 57.  To that question,

15  the VE answered that such a person could not work as a residence supervisor or perform any

16  "light work."  AR 58.  The ALJ's decision substantially reproduces this testimony in finding that

17  plaintiff is able perform her past relevant work as generally performed.  AR 30.

18      Plaintiff argues that this reliance is misplaced because the limitations in her RFC conflict

19  with the physical demands of being a residence supervisor.  ECF No. 17 at 19.  She highlights

20  that, according to the DOT, the job of residence supervisor requires frequent reaching, and she

21  argues that this requirement is incompatible with the limitation in her RFC to "occasionally

22  reach[ing] overhead with her right upper extremity."  AR 27; *see Residence Supervisor*, DOT

---

[4] The VE's categorization means that, as plaintiff performed the occupation, it qualifies as "medium work," and as it is generally performed, it qualifies as "sedentary work."  AR 56.  As defined by the Social Security Regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[5] The ALJ's second hypothetical aligns with the RFC as written in the ALJ's decision: "the person is limited to light work as before.  This individual may occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds, and then only occasionally balance, occasionally stoop, kneel, crouch, and crawl.  Again, occasional overhead reaching with the right upper extremity."  AR 56-57; *see supra*, page 3 (the ALJ's findings regarding plaintiff's RFC).

187.167-186, 1991 WL 671408 (1991). As plaintiff notes, "occasionally" and "frequently" are terms of art under the Social Security regulations: occasionally means "very little up to one-third of the time"; frequently means "from one-third to two-thirds of the time." SSR 83-14, 1983 WL 31254, at *2 (1983); *see also Residence Supervisor*, 1991 WL 671408.

In *Guttierez v. Colvin*, the Ninth Circuit rejected a nearly identical argument regarding the occupation of cashier: "the ALJ didn't err because there was no apparent or obvious conflict between the expert's testimony that [the plaintiff] could perform as a cashier, despite her weight bearing and overhead reaching limitations with her right arm, and the [DOT's] general statement that cashiering requires frequent reaching." 844 F.3d at 808. There, the court explained that "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Id.* (quoting SSR 85-15, 1985 WL 56857, at *7 (1985)). The court stressed that the inquiry was fact-dependent and found no obvious conflict because of "how uncommon it is for most cashiers to have to reach overhead." *Id.*

The DOT summarizes the occupation of residence supervisor as follows:

> Coordinates variety of activities for residents of boarding school, college fraternity or sorority house, care and treatment institution, children's home, or similar establishment: Orders supplies and determines need for maintenance, repairs, and furnishings. Assigns rooms, assists in planning recreational activities, and supervises work and study programs. Counsels residents in identifying and resolving social or other problems. Compiles records of daily activities of residents. Chaperones group-sponsored trips and social functions. Ascertains need for and secures services of physician. Answers telephone and sorts and distributes mail. May escort individuals on trips outside establishment for shopping or to obtain medical or dental services. May hire and supervise activities of housekeeping personnel. May plan menus.

*Residence Supervisor*, 1991 WL 671408. The DOT characterizes this as "sedentary work," which involves "sitting most of the time, but may involve walking or standing for brief periods of time." *Id.* The DOT indicates that most physical demands—such as climbing, balancing, stooping, kneeling, crouching, and crawling—are generally "not present"; however, it also indicates that "reaching," "handling," and "fingering" are required "[f]requently . . . from 1/3 to 2/3 of the

12

time." *Id.* Like the DOT listing for "Cashier" discussed in *Gutierrez*, 844 F.3d at 807, the DOT listing for "Residence Supervisor" does not specifically indicate that overhead reaching is frequently required; neither does it indicate whether the requisite reaching requires both upper extremities. *Residence Supervisor*, 1991 WL 671408. Moreover, the occupation summary does not include responsibilities that appear to require frequent overhead reaching. *Id.*; *see Bickford v. Comm'r of Soc. Sec.*, No. 2:12-CV-2557-CMK, 2014 WL 1302459, at *2 (E.D. Cal. Mar. 28, 2014) (rejecting a similar argument by a plaintiff limited to occasional right hand overhead reaching where "the DOT descriptions for the three jobs identified by the vocational expert" required frequent reaching but did not specify frequent "*bilateral* reaching"). Thus, there is no obvious conflict between the VE's testimony and the DOT guidelines, and the ALJ committed no error in relying on it.

Accordingly, the court hereby orders that:

1. the Commissioner's motion for summary judgment, ECF No. 19, is granted;
2. plaintiff's motion for summary judgment, ECF No. 17, is denied;
3. the decision of the Commissioner of Social Security is affirmed; and
4. the Clerk of Court is directed to enter judgment in favor of defendant Commissioner of Social Security and against claimant Traci Correia, and to close this case.

IT IS SO ORDERED.

Dated:   February 14, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE